HENRY APPEL, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Municipal Court of New York, Borough of Manhattan, Sixth District, November 8, 1935.

*Julius L. Schapira*, for the plaintiff.

*Tanner, Sillcocks & Friend* [*Edward T. Post* of counsel], for the defendant.

ROSALSKY, J.   The action is to recover $944.44 commissions or special salary claimed to have been earned by plaintiff while in defendant's employ as agent, for the purpose of selling life insurance and collecting premiums on policies already in force.

The answer, after denials, sets up defenses of an account stated, payment, and a short period of limitations contracted for between the parties.   Prior to the trial the parties stipulated certain facts and figures so as to confine the issues as nearly as possible to a decision of the questions of law presented.

Plaintiff's employment began on August 17, 1926, and continued until October 24, 1932, when the same terminated.   In the beginning, plaintiff signed an " Application for Agency," wherein he agreed that if he became employed by defendant, his " Compensation shall be in accordance with the present schedule of salaries and commission, or both, payable to Agents, and as the schedule or terms thereof shall be amended by the Company from time to time; that I will abide by all the rules and regulations of the Company as embodied in the Agent's Instruction Book and otherwise; and as they may be subsequently amended.   I also agree that any unpaid indebtedness under any contract made by me with said Metropolitan Life Insurance Company shall be liquidated by deductions from my earnings, and that upon the termination of my service with said Company any salary or earnings accruing to my credit shall be applied to any unpaid indebtedness in my account.   I also agree that upon the termination of my service with the Company the remuneration which I shall have received to that date shall be in full payment and satisfaction of all my services to the Company and all my compensation under this agreement and all claims upon the Company."

Plaintiff turned in weekly reports to defendant showing the new business on which he had written applications during that week; the business which was in such condition as to be deemed out of

benefit (or lapsed), and the amount of collections made on policies in force. Based upon the plaintiff's reports and ledger cards, he received payment from the defendant upon quarterly statements of his account, showing both credits and charges. But plaintiff contends that there were usually differences requiring adjustment from week to week and from quarter to quarter, although plaintiff signed salary vouchers each week, reading as follows: " I hereby acknowl-edge receipt of the amount of net payments shown above. This amount was the result of computations on the forms mentioned on Form 952; quarterly statements of agent's salary account, showing the compensation to which I am entitled for the present quarter, which forms have to be received at the time as required by the Company's rules."

The plaintiff testified that he was not afforded an opportunity to read these receipts because the defendant's cashier handed them to him through a window to be signed. Plaintiff, however, received duplicates thereof, which did not have the language above quoted, but recited that " This is a duplicate statement showing deductions in connection with your services, for which payment is made as of the week indicated above."

I will first dispose of the third defense relating to the short period of limitations. It is not contained in the " Application for Agency," but in the " Agent's Instruction Book," where the paragraph reads: " 96. Action at law. No action at law or suit in equity relating to your employment as Agent shall be maintainable until ten days shall have expired after service by postpaid registered letter upon the President or Secretary of the Company of a .written statement of the particulars and amount of claim against the Company, nor after six months from date of the transfer of your business to your successor or other Agent. If any action or suit shall be commenced after such six months from the date of such transfer, the lapse of time shall be taken to be conclusive evidence against any claim, the provisions of any and all Statutes of Limitations to the contrary being waived."

This action was commenced on November 27, 1934, or more than two years after this plaintiff left the employ of the company on or about October 24, 1932.

While substantially the foregoing stipulation, made part of " the terms of the agreement between the parties," was upheld in an action to recover money deposited as security for plaintiff's faithful performance of his duties as collector for defendant (*Better* v. *Prudential Ins. Co.*, 16 Daly, 344), yet the ordinary Statute of Limitations would apply, except in a case where a shorter limitation is prescribed by the written contract of the parties. (Civ. Prac.

Act, § 10, subd. 1.) But if the shorter time so prescribed is unreasonable, the clause is not binding.

A clause similar to the one above quoted was limited to matters connected with the employment of hiring. It was held that if a settlement with an agent was had upon an erroneous and improper statement of accounts, the agent's rights are not to be entirely cut off in six months, as this would be manifestly unjust. (*Jackson* v. *Metropolitan Life Ins. Co.*, 69 Misc. 265.)

Such defense is not looked upon with favor by the courts. I am constrained to hold, therefore, that this action was not barred. I now come to consider the merits of the action.

Plaintiff's grievance is that defendant wrongfully deducted various charges from his salary account, due to lapses or cancellation of policies.

The basic principle involved is that an agent receives two kinds of salary: A collection salary for keeping his " debit " in force, and a special salary depending upon the net increase of business he writes, over and above the insurance he is forced to lapse. As agent, the plaintiff received a special credit at the rate of twenty-eight times the premiums on new insurance issued. Before the agent is paid anything, the special salary charges against him are deducted. The means of debiting or crediting an agent for policies of insurance, which in some instances either lapse or are revived, or are issued in some debit other than that controlled by the agent, is by a mechanical process on printed forms in use by the defendant. An agent receives a regular collection salary for his routine duties of collecting premiums. The purpose of the so-called special salary compensation is to induce an agent to obtain and hold new business, as well as to retain other business which is already credited to him and is paid to him on that contingency. So that if the business is not continued, the salary is reduced. Thus, where a part of plaintiff's policies went out of business, or lapsed, or were canceled, the salary was proportionately reduced by the mechanical process known as " Special Salary Charge."

Plaintiff testified that he never agreed to deductions made by defendant in cases of special lapses, such as " reductions in premiums," " cash surrenders," and " dire needs," which are technical terms in use in the life insurance business. That such charges, in the case of " reductions in premiums " and " dire needs," did not come into existence until about four years after his contract of employment was made. Although Mr. Kennedy, defendant's supervisor of clerks in its policy division, testified that rules for such deductions existed as early as 1924 and were referred to in the agent's instruction book, such charges were actually made against the plaintiff as early as 1930.

The schedules. of salaries and the instruction book refer to the duties of an agent in regard to selling insurance, collecting premiums, canceling policies, paying claims, and contain the agreement between the agent and the company as to how their relations shall be further governed under various circumstances. Plaintiff urges that such schedules and the instruction book form no part of the application for employment, and were independent of the contract arising from the acceptance of the application. Defendant maintains that they were incorporated into and made a part of the application by reference, and so became integrated in the contract of employment.

I think it unnecessary here to determine whether the schedules of commissions or salaries and agent's instruction book form part of the contract of agency. (See Landis v. Colonial Life Ins. Co. of America, 74 Penn. Super. Ct. 560–566.) The account between the parties became stated at the end of each quarter, pursuant to their course of dealings. Plaintiff's weekly receipts on the basis of computations made by defendant and accepted by plaintiff were in accordance with defendant's records. Each week the details of the agent's " issue " and " lapses " were recorded in his life and lapse register and he received copies with instruction to check the same, and if errors were found, to return them to the home office. The payments made and accepted on that basis settled their accounts and operate to bar the plaintiff from reopening the accounts four years later, especially since there appears to be no claim of fraud or mathematical error of computation involved. (Jennings v. Prudential Ins. Co., 18 Misc. 470; Benson v. Metropolitan Life Ins. Co., 126 Wash. 125; 217 P. 709.)

Judgment for defendant.